UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATE JOHNSTON, DEAN OLSON, JERRY BERGMAN, and MARIA C. "TINA" CHILDRESS, individually and on behalf of all others similarly situated, THE WASHINGTON STATE COMMUNICATION ACCESS PROJECT, a Washington Corporation, and ASSOCIATION OF LATE DEAFENED ADULTS (ALDA),<br><br>Plaintiffs,<br><br>v.<br><br>FATHOM EVENTS JV, LLC, REGAL ENTERTAINMENT GROUP, AMC ENTERTAINMENT INC., and CINEMARK HOLDINGS, INC.,<br><br>Defendants. | NO. 2:18-cv-00011<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT AND THE WASHINGTON LAW AGAINST DISCRIMINATION** |

## I.   INTRODUCTION

Fathom Events is a multi-million dollar joint venture of America's three largest movie-theater chains to bring content like Metropolitan Opera productions, Broadway and London theater productions, classic movies and similar events to movie theaters across the country. With locations in every state, Fathom enables people in areas like Port Townsend, Washington, Twin Falls, Idaho and Sioux Falls, South Dakota to enjoy a Broadway musical or the Bolshoi ballet on the big screen in high definition, a better seat than people who attend live.

CLASS ACTION COMPLAINT - 1

But one group of people has been conspicuously omitted by Fathom – people like Plaintiffs whose sensory disabilities are significant enough that the available accommodations like volume-enhancing assistive-listening devices are not enough to enable them to understand and fully enjoy the presentations. Those people need captioning, in which the dialogue and lyrics are put into writing and displayed in sync with the pace of the production, enabling these people to "hear" with their eyes. With the singular exception of Metropolitan Opera supertitles – translations of the librettos into English – none of the Fathom Events are captioned. When approached, Fathom has told Plaintiffs that it cannot provide captioning, and has no legal obligation to do so.

For reasons specified in this Complaint, we believe both of those assertions are incorrect. Access can be provided, and if it can be done, federal and state disability laws require that it must be done. Plaintiffs are not seeking monetary damages, but only injunctive and declaratory relief to the effect that Fathom must, to the extent possible, provide access through captioning to plaintiffs and the millions of similarly situated individuals across the nation.

## II.   JURISDICTION AND VENUE

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because the claims are being made pursuant to a federal statute, the Americans with Disabilities Act (ADA) and particularly under the provisions in Title III of that Act dealing with auxiliary aids and services, 42 U.S.C. § 12812(b)(2)(A)(iii) and modification of policies and procedures, 42 U.S.C. § 12812(b)(2)(A)(ii). This Court may grant equitable relief pursuant to 42 U.S.C. § 12188(a)(1) and (2), and may award fees, expenses and costs to a prevailing party pursuant to 42 U.S.C. § 12205.

2. This Court has pendent jurisdiction over claims brought under the Washington Law Against Discrimination, RCW 49.60, which claims arise out of the same nucleus of facts as the claims under federal law.

3. This Court has personal jurisdiction over the non-resident defendants because they conduct continuous and systematic business in the Western District of Washington, and

because this cause of action arises out of those activities and the impact of those activities on Plaintiffs.

4. Venue is proper in this district and division because some of the acts and omissions at issue in this litigation occurred here.

### III.   THE PARTIES

5. Plaintiff Johnston is a resident of Bellevue, Washington. She wears two cochlear implants, prosthetic devices that stimulate the auditory nerve and provide a sensation of hearing. When she removes the external processors, she is totally deaf.

6. Plaintiff Olson is a resident of Edmonds, Washington. He wears two cochlear implants, and is totally deaf without the external processors.

7. Organizational plaintiff Washington State Communication Access Project (Wash-CAP) is a non-profit Washington membership corporation comprised principally of people with significant hearing loss. Its mission is to expand access to public life for such people through education, persuasion and, where necessary, litigation. Olson is president of Wash-CAP, and Johnston is a member.

8. Plaintiff Childress is a resident of Champaign, Illinois. She also wears two cochlear implants, and is totally deaf without them.

9. Plaintiff Bergman is a resident of New York City, New York. He has a severe bilateral hearing loss, and wears one cochlear implant and one hearing aid.

10. Organizational Plaintiff Association of Late Deafened Adults (ALDA) is a nationwide non-profit organization incorporated in Illinois. Part of its mission is advocating for the interests of its members and people similarly situated.

11. None of the named Plaintiffs and few, if any, of the members of the organizational Plaintiffs are able to fully understand and enjoy Fathom Events without captioning due to their hearing losses.

12. Defendant Fathom is a limited liability company headquartered in Greenwood Village, Colorado. It is owned equally by Defendants Regal, AMC and Cinemark.

13. Defendant Regal Entertainment Group is a publicly traded Delaware corporation headquartered in Knoxville, Tennessee. It is the second largest movie-theater chain in the United States, with over 7,000 separate auditoriums in 572 separate theater complexes.

14. Defendant AMC Entertainment, Inc., is a publicly traded Delaware corporation headquartered in Leawood, Kansas. It is the largest movie-theater chain in the United States and the world, with over 1,000 separate theater complexes.

15. Defendant Cinemark Holdings, Inc. is a publicly traded Texas corporation headquartered in Plano, Texas. It is the third largest movie-theater chain in the United States.

### IV. OPERATIVE FACTS

**Accessibility at Movie Theaters**

16. The three movie-theater defendants make virtually all of their movies accessible to people with hearing losses through captioning. The spoken dialogue and other aural information like "gunshot" or "spooky music" is put into visual form, then displayed on individual viewing devices in sync with the pace of the movie. This display method is referred to as "closed captioning," because the captions are visible only to patrons who request the viewing devices, as opposed to "open captioning," in which the captions are superimposed on the screen and are therefore visible to everyone in the auditorium.

17. The movie captions are prepared in advance by entities that contract with the studios, and are furnished at no charge to the theaters as part of the digital data package that has replaced traditional film at the overwhelming majority of American theaters, including all theaters owned and operated by defendant theater chains. The one-time cost to provide captions for a feature-length movie is less than $5,000, and the captions, once prepared, are usable wherever the movie is shown. The captions are distributed wirelessly to the individual viewing mechanisms, which the theaters provide.

18. Defendant Regal provides glasses, manufactured by Sony, that display the captions on the lens. Defendants AMC and Cinemark provide CaptiView devices, small shielded viewing screens roughly the size of a cell phone that are affixed to a flexible

gooseneck with a heavy base that fits into the cup-holder, and can be adjusted to place the captions in the same line of sight as the movie screen.

**Fathom' Content.**

19. Fathom's business is providing special "events" at movie theaters, which it transmits through a proprietary digital broadcast network. Those events are generally scheduled for times and dates when movie attendance ebbs. http://corporate.fathomevents.com/our-platform/ (last visited Dec. 31, 2017).

20. Fathom offers a broad variety of events, including classic movies, Metropolitan Opera performances, Broadway and London stage performances and specials made for television. In addition to the events themselves, Fathom offers extra material, including intermission interviews, commentary and other bonus features that are not available to patrons who attend the event in person or who watch the classic movies at home.

21. The lineup of participating theaters varies according to the specific event that Fathom is offering, but always includes a number of theaters in the metropolitan Seattle area. The Metropolitan Opera production of "Tosca" will be shown at the Pacific Place 11 in Seattle, the Oak Tree 6 in Seattle, the Southcenter 16 in Tukwilla and the Kent Station 14, all AMC theaters, the Thornton Place 14 in Seattle, Bella Bottega in Bellevue and Alderwood 7, all Regal theaters, and the Lincoln Square Cinemas in Bellevue, a Cinemark theater. The classic movie "Treasure of Sierra Madre" will be shown at all of those theaters except Oak Tree, and will be shown at an additional Regal theater, Auburn 17.

22. While the box-office revenue for movies slumped in 2017, Fathom Events had its best year ever, according to an article in "Variety" that Fathom posted on its proprietary website. http://variety.com/2017/film/news/box-office-fathom-events-2017-performance-1202643479/ (last visited Dec. 31, 2017). According to that article, 26 separate events in 2017 generated revenue of over $1 million, compared to 14 events in 2016 hitting that milestone. Big-screen classis movies and Metropolitan Opera performances were the most frequent million-dollar draws.

23. Although the vast majority of the events that Fathom offers have had captions prepared for some mode of presentation, such as television broadcast, live-theater performance or DVD sale, those captions are not made available at the movie theaters showing the Fathom events other than the limited exception of opera supertitles.

**Plaintiffs' Experiences with Fathom.**

24. Plaintiff Johnston went to one of the classic movies at the Lincoln Square Cinemas in Bellevue, owned by Cinemark, but discovered that the movie was not captioned, and was therefore not accessible to her. She would attend other Fathom events if they were accessible to her.

25. Plaintiff Olson wanted to see the Fathom presentation of "Winter's Tale" from the National Theatre in London with Kenneth Branagh and Judi Dench at the Sundance Theatre in Seattle (now owned by AMC), but learned that it was not captioned, and did not attend. He would attend other Fathom events if they were accessible to him.

26. Plaintiff Childress wanted to see the Broadway musical "Allegiance," which Fathom was bringing to her local theater in Savoy, Illinois, on Dec. 7, 2017. When she contacted the "Allegiance" production team, she was told that the Fathom presentation would not be captioned. The producers stated that it had provided captions, but that Fathom said that its transmission system was not usable with the captioning devices the theaters have installed.

27. Plaintiff Bergman enjoys the Metropolitan Opera, and especially likes the Fathom presentations because the camera can get the theater audience so much closer to the performers than even the live audience at Lincoln Center in New York City can get. While the supertitles – the English translations of the librettos – are visible, Bergman also wants to enjoy the intermission interviews and behind-the scenes features that Fathom brings to the AMC Empire 25 and the Regal Union Square 14 near his home, and those are not captioned and therefore not accessible to him. When he and other individuals in the New York City area asked about captioning for those intermission interviews and special events, Metropolitan Opera personnel told him that it was the responsibility of the theaters.

28. On information and belief, it is technically possible and feasible to make captioning available for most if not all Fathom events by re-formatting captions to make them compatible with the theaters' existing caption-viewing devices and/or by providing an alternative means of viewing the captions, such as a smart-phone application.

## V. CAUSES OF ACTION

**Count 1 -- Violation of the Americans with Disabilities Act (ADA).**

29. Plaintiffs repeat the allegations of Paragraph 1-28 of the Complaint, and incorporate them as if fully set forth.

30. Individual plaintiffs are all persons with a disability as defined in the ADA. Their deafness interferes with the major life activity of hearing, 42 U.S.C. § 12102(2)(A). Their status as people with disabilities entitled to the protections of the ADA must be measured without regards to the ameliorative effects of hearing aids or cochlear implants, 42 U.S.C. § 12102(4)(e)(i)(I).

31. Most members of the organizational plaintiffs Wash-CAP and ALDA are also persons with hearing disabilities within the meaning of the ADA, or are the spouses or companions of such people.

32. The movie theaters owned and operated by Defendants Regal, AMC and Cinemark are "places of public accommodation" under the Title III of the ADA, and are subject to the obligations that apply to such places. 42 U.S.C. § 12181(7)(C).

33. The ADA prohibits Title III "places of public accommodation" from denying individuals with disabilities the opportunity to participate in or benefit from the goods, services, privileges, advantages or accommodations offered to others, 42 U.S.C. § 12182(b)(1)(A)(i), or from offering benefits not equal to those offered to others, 42 U.S.C. § 12182(b)(1)(A)(i).

34. The statutory prohibitions against discrimination by "places of public accommodation" prohibit not only direct acts or omissions by the specific business, but extends to actions undertaken "through contractual, licensing or other arrangement," *Id.* The involvement of Fathom as a separate entity does not alter the obligations that Regal, AMC and

1   Cinemark would owe to the plaintiffs if Fathom did not exist, or alternatively, the ADA imposes upon Fathom as an alter ego the obligations of Regal, AMC and Cinemark as movie-theater owners.

35. Prohibited discrimination by a place of public accommodation under the ADA includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

36. The ADA defines "auxiliary aids and services" as "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments," 42 U.S.C. § 12103(1)(A). Implementing regulations specify that open and closed captioning are auxiliary aids and services within the meaning of the ADA. 28 C.F.R. § 36.303(b)(1).

37. The ADA also requires places of public accommodation to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii).

38. Fathom, Regal, AMC and Cinemark are therefore required by the ADA to provide auxiliary aids and services like captioning to make Fathom events accessible to plaintiffs and others similarly situated, and to alter any policies, practices and procedures necessary to accomplish those objectives.

**Count 2 – Violation of the Washington Law Against Discrimination.**

39. Plaintiffs repeat the allegations of Paragraph 1-34 of the Complaint, and incorporate them as if fully set forth.

40. That Washington Law Against Discrimination (WLAD), RCW 49.60, defines "places of public accommodation" as including any place conducted for entertainment, RCW

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

49.60.040 (definitions), which includes movie theaters. *Washington State Comm. Acc. Project v. Regal Cinemas et al.,* 293 P.3d 413, 421 (Wash. App. 2013).

41. Pertinent regulations require places of public accommodation to provide "reasonable accommodations" to make their services equally available to people with disabilities. WAC 162-26-080. "Reasonable accommodation" is "action, reasonably possible in the circumstances, to make the regular services of a place of public accommodation accessible to persons who otherwise could not use or fully enjoy the services because of the person's sensory, mental, or physical disability," and "accessible" is defined as "usable or understandable by a person with a disability," WAC 162-26-040.

42. Fathom, Regal, AMC and Cinemark are required by the WLAD to take all reasonably possible steps to make Fathom's offerings accessible to plaintiffs and similarly situated individuals through captioning.

## VI.   CLASS ACTION ALLEGATIONS

43. Plaintiffs repeat the allegations of Paragraphs 1-38 of the Complaint, and incorporate them herein.

44. Plaintiffs bring this action pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure. Plaintiffs ask the Court to certify a class described as follows:

> **All individuals with hearing loss who require captioning to understand and fully enjoy Fathom Events, and who wish to attend a Fathom Event but are either deterred from doing so by the absence of captioning or who do attend but cannot fully enjoy the event because they cannot fully understand the spoken and sung content of the presentation.**

45. The requirements of Rule 23(b)(3) are met for the following reasons:

a. **Numerosity** – An individual's ability to comprehend speech depends on a number of variables, most notably the listening environment. A theater is a particularly challenging environment for a number of reasons. The listener may not be able to use common mechanisms of supplementing auditory information, such as speech-reading, and obviously cannot use other coping mechanisms such as the ability to ask the speaker to repeat or re-

phrase. Context often helps people understand speech by enabling them to anticipate what will be said, but the essence of drama or especially comedy comes from the unexpected moment where the context changes, and it is that critical content that people with hearing loss most frequently miss. Song lyrics are particularly difficult because background noise – even pleasant background noise like the musical score – makes it more difficult to distinguish words.

According to the federal Center for Disease Control, some 15% of adult Americans report having some difficulty hearing. http://www.cdc.gov/nchs/data/series/sr_10/sr10_260.pdf (see p.13). While no precise numbers can be given, suffice it to say that a significant proportion of the actual and potential audience for Fathom Events cannot understand dialogue and lyrics through hearing alone. Moreover, there is simply no way to identify those individuals because any available information would be protected by medical privacy rules.

b. **Commonality and Typicality** – There are no questions of law or fact unique to named Plaintiffs, Wash-CAP or ALDA. The undisputed fact is that Fathom Events are not captioned. Plaintiffs allege that the ADA requires Fathom and the theater defendants to provide captioning. Any available affirmative defenses apply equally to named Plaintiffs and to class members. Because Plaintiffs seek only declaratory and injunctive relief, and do not seek damages, there are no individual issues.

c. **Fair and adequate representation** – There is no conflict between the demands of names Plaintiffs, Wash-CAP and ALDA for captioning and the interests of other potential patrons who might want captioning, nor does this demand conflict with the interests of patrons who want other aids and services.

Undersigned pro hac vice counsel has had considerable experience in actions of this nature. He represented ALDA. He represented (Wash-CAP) in *Washington State Communication Access Project v. Regal Cinemas et al.,* 293 P.3d 413, 173 Wn. App. 174 (Wash.App. 2013), and represented ALDA in California litigation against Cinemark and a settlement with AMC. He is also part of a group advising Broadway Theaters on new methods of providing captioning for every performance, some of which methods may prove applicable

CLASS ACTION COMPLAINT - 10

to Fathom Events presentations. Local counsel have extensive experience with class-action cases.

46.     A class action is superior to other available methods for adjudicating this controversy. Because we are asking certification for only those people who would benefit from captioning, and are explicitly not asking Fox to discontinue any other auxiliary aids and services it is presently providing or attempting to preclude any aids and services Fox may provide in the future, none of the class members have any interest in individually controlling the prosecution of any separate action. We do not anticipate any difficulties in managing the requested class.

## **PRAYER FOR RELIEF**

47.     Plaintiffs are entitled to relief as follows pursuant to the provisions of 42 U.S.C. § 12188(a)(1), which incorporates the remedies of 42 U.S.C. §2000-a(3)(a):

    a.     For a declaratory judgment stating that the ADA requires Defendants to provide captioning for Fathom Events presentations, and for a nationwide injunction requiring them to do so;

    b.     For a declaratory judgment stating that the WLAD requires Defendants to provide captioning for Fathom Events presentations, and for a statewide injunction requiring them to do so;

    c.     If and to the extent that Defendants demonstrate that no presently existing technology, individually or in combination, can enable Fathom Events to be presented with captions, for a declaratory judgment stating that Defendants must be offer captions whenever it does become technically possible and not unduly burdensome with the meaning of the ADA or not reasonably possible within the meaning of the WLAD, and for an injunction requiring Defendants to publicize their interest in finding and implementing such a solution;

    d.     For all costs of court, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and RCW 49.60.030(2).

    e.     For such other and further relief as may be appropriate.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  DATED this 4th day of January, 2018.

2            BRESKIN JOHNSON & TOWNSEND, PLLC

3

4            By: /s/ Roger M. Townsend
             Roger M. Townsend, WSBA # 25525
5               1000 Second Avenue, Suite 3670
             Seattle, Washington 98104
6               206-652-8660 Phone
             206-652-8290 Fax
7               rtownsend@bjtlegal.com

8            LAW OFFICE OF JOHN F. WALDO

9            By: /s/ John F. Waldo
             John F. Waldo, Texas Bar No. 20679900
10               (application for pro hac vice admission
             forthcoming)
11               2108 McDuffie Street
             Houston, TX 77019
12               Phone: 206-849-5009
             johnfwaldo@hotmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27